Thank you very much. Good morning, everyone, and welcome. Good morning, Judge Roedner. Good morning. Good morning. We have six cases this morning. After the second case, we'll take a brief recess for about ten minutes if anyone in the court wants to take a break. We'll begin with our first case, number 19-1349, O'Brien v. Village of Lincolnshire. Mr. Pazda? Yes, Your Honor. You may begin. Thank you. May it please the court, my name is Robert Pazda, and I'm here today representing Dixon O'Brien, John Cook, the International Union of Operating Engineers, Local 150, and the Chicago Regional Council of Carpenters, the appellants in this case. Your Honors, this case is about whether the taxpayer's third amended complaint against the Village of Lincolnshire and the Illinois Municipal League for their constitutional violations and ultra-various conduct was appropriately dismissed with prejudice, and whether the taxpayer's motion to alter or amend in order to file an amended complaint was appropriately denied. The taxpayers respectfully ask this court to reverse the district court's decision for three reasons. First, because the third amended complaint contained facts which, taken as true, properly stated a cause of action against the Village for compelling subsidization of private speech. Second, because the district court abused its discretion when it dismissed the third amended complaint with prejudice, which was the first complaint filed against the IML, the first complaint dismissed in this case, and contained novel legal issues which were being considered for the first time. And finally, because the district court abused its discretion by applying the incorrect standard when considering the taxpayer's motion to alter or amend. Mr. Pazda, before we go too far, I just want to clarify, because it wasn't crystal clear from your briefing. Are you withdrawing Mr. O'Brien as an individual plaintiff as to the injunctive relief and just leaving him in for monetary relief purposes given that he no longer lives in the Village? Correct. That's right. Okay, thank you. And Mr. Pazda, let me start you off, please. If Lincolnshire itself issued the same speech that IML released, would you agree that this would be government speech that is not subject to First Amendment scrutiny? If I understand your question correctly, yes, it would. If, for instance, the Village of Lincolnshire sent out an email similar to what the IML did in this case, then I think that that would be government speech. If so, then, why does it matter that Lincolnshire joined with other municipalities to issue the message through the IML? As alleged in the Third Amendment complaint and proposed Fourth Amendment complaint, the Village of Lincolnshire and the rest of the municipal members had nothing to do with the issuance of this speech. The IML worked with third parties, not municipal members, to issue or engage in the speech at issue. Therefore, because the IML is a private entity, the speech at issue is not government speech. Why does it matter whether IML is a public or a private entity? Does the nature of the speaker control the question here or the nature of the speech? If the government chooses to use a private party to issue the speech, does that mean that it's no longer government speech? So I think depending on the circumstances, it could be both the identity of the speaker or the nature of the speech that goes to this compelled subsidization analysis. If the speaker is a government actor, then I think the analysis ends there. It is government speech. However, if a private party is involved and the government is subsidizing the speech of that private party, then the analysis under United Foods and Johans requires that the speech either be part of a broader regulatory scheme or that the government control the speech from beginning to end, as was the case in both Johans and Adams v. Maine Municipal Association, which is a case that the district court judge relied on. But as alleged in both the Third Amendment complaint and the Fourth Amendment complaint, the government had no control over the speech at issue. But a government can hire an advertising agency, for example, to craft a message and issue it. So long as the government is in ultimate control of the speech, isn't it government speech? If those were the facts, then it would be government speech, as identified in the Johans case. The government set the initial generic message, then supervised the creation of the message, and then approved the final wording of the message. So it had control of the message from end to end. However, in this case, again, as alleged in the complaints, the municipal members had no control. They did not approve the message or broadly support Governor Rauner's turnaround agenda. They were not involved in overseeing the crafting of the message and did not approve the message before it was distributed to its municipal members. Again, all at the cost to the taxpayer plaintiffs in this case. But I thought you alleged pretty clearly that, in your view, the speaker is IML. And IML is a private entity, as you emphasize. And you're not alleging that the speaker is a media consultant or a private employee or anything like that. Is that understanding correct? Correct. The speech that we take exception to is not the Village of Lincoln Shires speech. Right, it's IML's, right? Right. And I think that's at the heart of what Judge Rovner is asking. IML, as you allege in your third amended complaint, is an association of 1,000 municipalities. And everyone knows that municipalities are going to draw upon consultants and advisors and assistants and all kinds of folks. So the fact that the message may have been crafted by somebody that wasn't an employee of one of the municipalities, why is that either here or there? If you're alleging the speaker is IML, and if one government speaks its government speech, I don't know how it's any different if 1,000 governments come together and they all speak. Because in this case, 1,000 governments did not come together. That if you follow the Adams v. Maine Municipal Association case or the judge analysis in this case or the appellee's brief, they talk hypothetically about how the IML is supposed to work. That there's a legislative committee that member municipalities participate in and sit on. They come up with the messaging. Then that gets approved or sent out to the board of directors. And they approve the topics to advocate for the messages to distribute. None of that happened in this case. So none of the member municipalities participated. It was Governor Rauner and the executive director. And as we found out during discovery, alleged in the fourth amended complaint, the proposed amended complaint, that they worked with an outside consultant to craft this message and then lobby the municipal members at a cost to the taxpayers. But isn't the structure governed by statute and by the bylaws? The structure? You said that the structure of how IML works. You said that they came up with this. Isn't it governed, though, by documents that you reference in your complaint as opposed to something they just came up with? The statutory provision that allows municipalities to become members of and pay dues to the IML is very specific on the role of the IML, how it's supposed to work. Nonpolitical may distribute information on behalf of its municipal members. But there's no statutory mechanism that created the IML. The IML was in existence before the municipal code was amended to allow municipalities to participate. So the IML itself is not a government entity, as I think the appellees concede in their brief that this wasn't created by statute. Under Illinois law, it cannot be a government entity. And, indeed, the village admitted that the IML was a private entity in its answer to the amended complaint. But does that mean? So are you saying that the Illinois statute does not, would not answer the question of whether the IML speech is government speech? Is that what you're saying? Yes, Your Honor. Let me ask you to focus on set the village of Lincolnshire aside entirely, okay? Just ignore them. And focus just on IML as a defendant. How do you have standing to sue IML as a standalone defendant? What has I, I understand the theory of the government speech with the municipal tax. I got that. Okay.  Because redressability is a prong of standing, right? So I think going back to the structure of the Third Amendment complaint, the first two counts are the First Amendment counts related to the compelled disqualification. No, I know. But you name, you name in some counts, you name IML as a standalone defendant. Correct. So the IML could redress the injuries in this case by stopping sending out messages on behalf of third parties without the municipal members. Does that make sense though? So on the basis of a few taxpayers in the village of Lincolnshire, the Illinois Municipal League composed of 1,000 municipalities or thereabouts, would have to stop disseminating messages because they're found offensive to a few residents of a particular village? Well, I think that goes back to then the issue of whether or not the IML is a public or private actor. No, no, no. It doesn't. I'm just focusing on an Article III standing analysis vis-à-vis IML as a standalone defendant. If the IML is acting outside its statutory powers, as we allege, then the injunctive relief could be applied to the IML with respect to sending out messages that are not approved by the municipal members would be the theory in Count 5, I believe, of the Third Amendment. If the IML operated as the Illinois statute describes, would statements of the IML be government speech? They likely would. Again, I think it would depend largely on the facts and the analysis in both Johann's and Adam's are fact-intensive, something that we really didn't have an opportunity to get to here on the motion to dismiss. But if the municipal members or the IML, as permitted by statute, is distributing information on behalf of its municipal members, in other words, Lincoln Shire sends the IML a message, says, you know, we think this is a good idea, it would improve local government, and then the IML distributes that message to its members, then that probably would be government speech. So is your real complaint that the IML has acted independently of its government members? I mean, on page 18 of your brief, you say that IML is really controlled by a third party. Who is this third party? The executive director of the IML. And then to answer your first question, yes, our complaint is that the IML has acted independently to lobby its own members on behalf of third parties. And is that something that we could derive from the Third Amendment complaint? I know you have a proposed Fourth Amendment complaint that has a lot of additional factual allegations in it. But your statement in the brief that Judge Rosenbrenner just identified, how can we pull that out of the Third Amendment complaint? What was at issue? So in the Third Amendment complaint, paragraphs 17 and 41, we allege that the IML is a private entity. That allegation would pull it, in the government speech analysis, away from government speech and then require control by the municipal members from beginning to end, because I don't think there's been any argument at all that this is part of a broader regulatory scheme. But do you allege anywhere what you've argued in your brief, not that it's a private entity, but that it was controlled by the executive director who is not associated with any of the municipalities? Yes. Paragraphs 30 through 34, not that explicitly. And we tried to clean that up a bit in our Fourth Amendment complaint and with additional evidence that we gathered. But 30 to 34 talks about the specific conduct that we object to. But I think that's a separate question than who is controlling it. You've argued that the executive director who was not affiliated with the municipality had the control here. Where could we find that, even viewing the allegations in the light most favorable to your client in the Third Amendment complaint? It was paragraphs 31, 32, the email, and I'm not sure if it's specifically listed or would have to be referred to an exhibit, but it was the executive director who sent out the email to the member municipalities in the text of the email, obviously at the request of Governor Rauner, with no involvement at all by the municipal members. And your complaint, looking at those paragraphs, says that it was IML who sent that out. So somehow you think we should pull that it was the executive director? I'm almost certain that the email's attached, and it was from the executive director, Brad Cole. This is the point. This is the exact point that Judge Blakey emphasized, though, right, in dismissing the complaint on this ground, said that you failed to plead any private involvement in any of IML's decisions or its message here. But we pled that the IML- This is the exact point I think Judge St. Eve's making. We pled that the IML itself was a private entity. Well, sure, as a formal matter. I mean, nobody's arguing that they're an arm of government, right? I mean, of course they're private. So if they're private, then there has to be complete control over the message in the Johans analysis, and there wasn't here by the municipal members as there was in Adams v. Maine Municipal Association. But where do you allege that? I guess viewed in a light- I mean, you're arguing it. I mean, you're as clear as a bell in the argument, but where do you allege it? The allegations would be the paragraphs 30 and 34 about it was Governor Rauner who instigated it, Brad Cole who sent out the email. But the allegations don't say anything about Brad Cole, who he is. I have the attached email, and you're correct. It was attached, but it says Brad Cole, Executive Director. But there's nothing saying who the Executive Director is or why the Executive Director is not part of one of the municipalities. And at this stage of the briefing, the private status of the IML was not disputed. And again, based on those allegations, viewed in a light most favorable to the plaintiffs, we think that that covers it, and if not, requested the ability to amend to cure those defects. That's the second point that you raised on appeal, that the district court should not have dismissed the third amendment complaint with prejudice because it was the first time the private status and government speech with respect to the IML was at issue. So to the extent there's a defect. Well, or at any rate, what I'm hearing is that you've gone through three plaintiffs without making what is the essence of your argument. I mean... In fairness, the first two amended complaints were, the first was done very quickly after the filing of the first complaint just to add a few facts, and the second was to add parties that Mr. Cook and the Carpenters. There was no changes in allegations, and in response to that complaint, there was no challenge to government speech by the IML. It wasn't even an issue in the case. So by the time the third amendment complaint rolled around, we addressed the issue head-on, but that had never been an issue prior to the filing of this complaint, so it was the first complaint where it was addressed and the first complaint against the IML. Mr. Pazit, do you want to... What has the district court done to violate the plaintiff's rights? Has it done anything more than join the IML, as it seems to be authorized by statute to do? It's the compelled subsidization, taking tax dollars and funding the IML for what we would say is an unauthorized purpose, and that's at count four of the third amendment complaint, which really isn't at issue here, that the IML is acting outside the scope of its statutory authorization. Therefore, the Village of Lincoln Shire can't fund that organization because it's become something different now than it was when the statute authorized the village to join. Mr. Pazit, I'm sorry. Go ahead, Judge. Forgive me, but I'm not sure I understand what you're saying. You're saying that's not at issue here, but... Well, correct. So the complaint against the Village of Lincoln Shire on these facts before the court today is whether or not they compelled subsidization of private speech, which we say is the IML. So it's the joining and paying dues to the IML that's in front of the court today. Okay. Thank you. I have one more question on the amended complaint issue, and I'm going into your rebuttal time. I'm sorry, but you dispute the district court judge's characterization of a representation that you allegedly made during a November 29, 2018 motion to compel hearing where the district court judge found that you made a certain representation that you didn't need to amend the complaint. You have argued that the judge mischaracterized what you said. I can't find a transcript in the record. Is there a transcript anywhere? And if not, how can we do anything but defer to what the district court judge said if we don't have the facts before us? The transcript is not in the record. Okay. All right. Thank you. Okay. I'll give you a minute for rebuttal. Thank you. This is it. Burekett? Burekett. Burekett. Good morning judges, counsel, if it please the court. I'm Laura Lee Burekett from Brown, Hay, and Stevens in Springfield, Illinois, and I represent the village of Lincolnshire and the Illinois Municipal League in this case. And please pardon me for the throat clearing. I've got allergies since that time of year. Throughout this argument, I will be referring to plaintiffs collectively as the unions, and I include in that the individual plaintiffs. Of course, what we have to do here today is look at the third amended complaint, which was actually the fourth complaint. So there was a complaint, and that was the third amended complaint, to see if there are sufficient allegations to state a claim for First Amendment and equal protection violations. They do allege that IML is a private organization, but they also allege and incorporate that the village is a member and expressly authorized to be a member by Section 1-8-1 of the municipal code. In addition, the unions attach the bylaws of the IML at paragraph 28 as Exhibit A. When you look at those bylaws and at Section 1-8-1, what you see is that the IML is an instrumentality through which the municipal members may disseminate information, provide research services, and do all other acts to improve local government through this instrumentality. And the bylaws make it clear that municipalities are the only category of membership. So are you disputing that IML is a private entity? I think it is a quasi-governmental entity. It's an association. Did you move to withdraw your concession that IML is a private organization, as far as I can tell? No, and that was made only by the village of Lincolnshire. It was made in response to the First Amendment complaint. By the time we got to the Third Amendment complaint, IML had been joined. And what happened, rather than answering that Third Amendment complaint, the village of Lincolnshire jointly moved to dismiss it. But the answer is still an admission by the village. But I don't think it's an admission of fact. I think that this is a question of law. The facts are, how is the IML run? Sorry. What authority, specifically what case law, allows Lincolnshire to walk back this admission? Because it is an admission. It is an admission to that First Amendment complaint, which was superseded by the Second and the Third Amendment complaints. But it's the same allegation. It is the same allegation. I will grant that. I can't un-ring that bell. But what I am saying is that it did not admit any facts. What the admission is is really a question of law. And that question of law has to be answered by this court. The facts are alleged in the complaint that helps the court do that. And those facts are found in the bylaws and in Section 181 of the Municipal Code. The bylaws provide that only the chief elected officials of the respective municipalities may be on the Board of Directors or serve as officers of the IML. Does it matter for the government speech doctrine as a question of law if IML is a private entity? It does not matter for the government speech doctrine. Why not? Because as the court remarked earlier, if my hometown of Springfield hired a PR firm and put out all sorts of speech on what a great place it is to live to attract residents there, that is now Springfield speech. It's not the we can make you look good firm speech. It's Springfield speech. So the fact that it originates with a private entity does not answer the question. It's what the public body does with it. In this case, we're talking about speech that came from the governor's office. And I want to stop here for a moment too. It's been this idea that this speech came from some third party outside of government of Illinois. It was from a sitting governor. And while his opinions may chafe all the union members greatly, it was still government speech. It didn't lose that character as it moved through the IML, nor did it lose that character when the village of Lincolnshire adopted the turnaround agenda that came from governor's office. When they adopted the right to work ordinance that also came from the governor's office, and when they paid their dues to the IML to be a part of the message that comes from the IML. So there was government speech from the get-go. Now, I will also make a point that we recognize that there are some other aspects of speech that the union has complained about. In their third amended complaint, they say that contributions were made. We addressed that. The IML did make contributions. A village could not make a contribution to a particular party or a particular candidate. And if the statute of limitations had not run, we would probably be looking at something else. But the executive director stopped. The new Brad Cole, the executive director, stopped that practice. And within the time of the statute of limitations, there have been no contributions whatsoever to any candidate or cause. Membership dues have been paid. Fees to go to different programs for their employees, for IML employees, that has been paid. But those are not contributions. IML receives something of value for those. Contributions are, as we know, something you give away without expectation of something in return, or at least that's what it's supposed to be. Ms. Burkett, do you believe the plaintiffs have standing to sue IML as a standalone defendant? No, Your Honor. Honestly, I was just a little red in the face when you started on that because I know I should have raised that. I don't think they do have standing. I think the only group who is standing with regard to the IML would be a member municipality who is objecting to how the IML is being run. Like somehow it's gotten away from the municipal members, the directors don't know what's happening, that sort of thing. But none of that is occurring. And in the allegations of the third amended complaint, we see that the executive director is appointed by the board of directors, sits at the pleasure of the board of directors, and is under the general direction of the board of directors, all of whom are the primary elected official of their respective municipality. The other thing to that is, I mean, it's an interesting question because associations don't have any separate existence. They don't have a they're not incorporated or anything like that. We have bylaws here. So it exists, but it doesn't exist independently of its members, and all of its members are governmental entities. It's not the mayor who is a member of IML or the chief or maybe one of the aldermen. They aren't the members. It exists as an entity, right? I mean, presumably it could enter into a contract, a lease office space. It does have entity status. Yes, it can do that. But as an entity, it is a group of governmental entities. You know, at least some of the Supreme Court analysis of government speech cases rely on the ability of taxpayers to disagree with speech at the ballot box. But when the message is filtered through an association of municipalities, would that be an effective remedy? It seems to me that all the taxpayers can do at the ballot box is object not to the speech, but to the municipality's membership in the IML. That seems like a watered-down remedy, unless you disagree with that. No, I mean, and it is the case in government speech. You can't replace the USDA either, but taxpayers can make their feelings known about, you know, forced government tax write-offs or check-offs. Citizens can lobby on any subject matter, including membership in the IML. That's voluntary membership. And if they want to field candidates for the village of Lincolnshire, who would eschew the opportunity to become part of such a beneficial entity, then they could do that. But that hasn't happened. We don't know. There's no factual record on this, but suppose this afternoon the IML issues a highly controversial message on some, you know, hot policy issue or what have you. Is there anything that would prevent the village of Lincolnshire from issuing a press release saying, we actually respectfully disagree, we take just the opposite view? Absolutely not. It could do it at any time. And that's a fine point in this case and one that kind of gets glossed over, so I appreciate you raising it. The village here wholeheartedly adopted this speech. It adopted the turnaround agenda. It supported Governor Rauner. The unions don't like that. The union members didn't like that. But the village could do that, and they could vote all the village people out the next time around who supported the right-to-work zone. They passed their own right-to-work zone ordinance, and that case has been in front of the Seventh Circuit. Ms. Burkett, is this a question that can be resolved at the motion-to-dismiss stage? The cases that you rely on most heavily, Johans and Adams, had developed factual records. Adams came after a bench trial. Johans came after summary judgment. We don't have those facts developed here. I know some discovery took place and some was incorporated into the Third Amendment complaint. But is this something we can decide at the motion-to-dismiss stage? And are there any cases out there where this issue has been decided at the pleading stage? I have not seen any cases where it's been decided at the pleading stage, no. But I think here on this record, what we had was a lot more than you usually have before the court. When motions were filed in response to the motion-to-dismiss, there were things attached. When the Rule 59E motions were filed, there were things attached. There was a lot of the record was in the record, even though it was still at the pleading stage. But you may have things attached, like the bylaws and the particular emails at issue, but that certainly can't replace a fully developed summary judgment record with depositions, supplements, et cetera. So how is it that we can or should decide this case at this stage? Because I think that this is one of those cases where, as a matter of law, it's quite clear that they cannot state a cause of action for a First Amendment or equal protection violation. When they are bringing it against the village of Lincolnshire and the IML. The IML is still a government. While it's not created by the government, in that sense it's not a governmental entity, it is an association comprised entirely of governmental entities. I cannot see how speech emanating from there would be anything but public. I believe that you believe that the Illinois statute answers the question of whether the IML speech is a government speech. Correct? Yes, the IML in the statute is described as an instrumentality of the municipal members. If it is a tool of the municipal members. What could the plaintiffs possibly say in a Fourth Amended or Fifth Amended or whatever amended complaint that would change that outcome? It doesn't change the outcome. In fact, if you look at all of the allegations that were added to the complaint they proffered with their Rule 59E motion, there are just details. The complaint itself is the same complaint as the Third Amended complaint. There are details added, but as the plaintiffs point out to us many times, this is a notice pleading jurisdiction, and those facts didn't change the substance of what was alleged. The substance here is that when IML, that's made up of municipalities, passed on speech from a governor of the state, that that was somehow private speech, and that's just not possible. If that is the allegation, if that's what the complaint rides on, there's no record necessary. We don't have to go so far, though, do we, as to say that there's no hypothetical set of facts. You can't even fathom one where there would be private speech at issue here, and the reason is because the IML, of course, as you've indicated, is an association of municipalities. I thought what you would say is, well, let's just look at what's alleged here. We don't have to answer hypothetical questions, and they haven't alleged any private capture. The only thing that was alleged was the contribution to private parties, and I've already addressed that. We don't have to announce any kind of broad, because had they pled the Third Amendment complaint differently, along the lines of some of the questions Judge St. Eve was asking, they may have a pretty decent argument. This can survive a motion and get into discovery. That's what I read Judge Blakey's opinion to really turn on, that there's just no allegation of private involvement. And that's exactly right. There is no allegation of private involvement. I think that the suspicion or whatever the speculation is that Brad Cole, the individual, has control of the Illinois Municipal League, when, in fact, Brad Cole, as executive director, does run the Municipal League on a day-to-day basis. That's what all executive directors do. The business manager, Brad Burke, at the Village of Lindenshire, is not an elected official. That doesn't make the village a private party or make the village speech private speech. Brad Cole works for the IML. He works at the pleasure of a board of directors that are all elected officials, and he may be terminated at any time by them. Is the IML subject to Freedom of Information Act requests? It is not, and that has never been challenged. Freedom of Information requests do get received, and they are rejected by the IML. I don't, and we have been limiting our argument and analysis to this First Amendment issue. But must it comply with meeting requirements, for instance? Right. No, it doesn't do that. So if it's essentially acting as a government organization, why would it be exempt from those sorts of requirements? That's a question that's been tossed around at the legislature several times, and it's never gone anywhere. But, again, that has never been challenged in court. These plaintiffs have never challenged it. That has not been tested yet. And there is a different standard for government speech than there is for FOIA. The last point I would like to bring up is that when the unions filed their Rule 59e motion, they based it entirely on discovery of new evidence. I went through that evidence in rather painstaking detail to show that all that newly discovered evidence was already a part of this record.  And for a 59e motion, it has to be something that wasn't available during the course of the litigation. And none of this was. And for the liberal, the Rule 15 liberal pleading standard to come into play, this court has said, assuming the requirements of Rule 59e are met, then the liberal standard applies. You don't get to jump over the requirements of 59e and go straight to liberal pleading because then you're back at day one, and that's not where we were. Any other questions? Thank you very much. Thank you. Oh, I was supposed to say this. Please affirm the district court's decision in all respects. Thank you, Ms. Burkett. Mr. Pazza, go ahead and take a minute and make your points. Even assuming the district court was correct in dismissing the Third Amendment complaint, it should not have been with prejudice, and the judge abused his discretion both by dismissing the Third Amendment complaint with prejudice and denying the Rule 59e motion. But when the judge dismissed the Third Amendment complaint with prejudice, you had not asked as part of your relief in lieu of going forward to file an amended complaint, did you? At that point. You didn't ask for that until the Rule 59. Correct. We were in the middle of a discovery battle with the motion to compel, trying to get evidence related to the private status of the IML. So how could it be error for the court to dismiss it with prejudice if you hadn't asked for that relief? Because this was the first complaint dismissed against the IML, the first complaint dismissed at all in this case, and the court addressed novel legal issues, which it acknowledged in its decision the government speech doctrine was still evolving, and there were very few cases addressing an association's ability to claim government speech as in these facts. Therefore, we would request that this court find abusive discretion in both dismissing with prejudice and denying the Rule 59e motion. Thank you. Thank you, Mr. Fasa. Thanks to both counsel. The case will be taken under advisement. We'll move to the second.